IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-65-D

| | |
|---|---|
| JOSEPH M. CALVACCA, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's 13 & 15). The time for the parties to file any responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. (DE-17). For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-13) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-15) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for disability insurance benefits ("DIB") on April 20, 2006, alleging that he became unable to work on September 11, 2004. (Tr. 14). This application was denied initially and upon reconsideration. *Id.* Two hearings were held before an Administrative Law Judge ("ALJ"), who ultimately determined that Plaintiff was not disabled during the relevant time

1

period in a decision dated March 17, 2009. *Id.* at 14-20. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on January 13, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 3-6. Plaintiff filed the instant action on February 14, 2011. (DE-1).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan,
2

907 F.2d 1453, 1456 (4th Cir. 1990).

**<u>Analysis</u>**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 11, 2004. (Tr. 16). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) reactive airway disease; 2) status-post right shoulder surgeries; and 3) post-traumatic stress disorder ("PTSD"). *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 16-17. Based on the medical record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work . *Id.* at 17.

The ALJ then determined that Plaintiff was not able to perform any past relevant work.

*Id.* at 19. However, a vocational expert ("VE") testified that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. at 18-19. Likewise, the ALJ reached the same conclusion by referring to the Medical-Vocational Guidelines ("Grids"), 20 CFR Part 404, Subpart P, Appendix 2. *Id*. at 19-20. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* at 20. These determinations were supported by substantial evidence, a summary of which now follows.

Plaintiff reported nightmares, depression, impatience, and sadness on May 1, 2002. *Id.* at 158. His counselor assessed Plaintiff with mild PTSD, depression, and grief issues. *Id.* On May 7, 2002, it was noted that Plaintiff's mood had improved. *Id.* at 159.

On February 14, 2003, Plaintiff was assessed with right shoulder impingement syndrome. *Id.* at 70. Plaintiff underwent a right shoulder surgery on February 19, 2003. *Id.* at 71-72. There were no complications during this procedure. *Id.* at 71.

Plaintiff received treatment at Digiovanna Family Care Center from April 9, 2004 until November 7, 2006. *Id.* at 73-98. During his treatment, Plaintiff's heart and lung functioning was assessed several times, and the examining physician generally marked a box labeled "normal" following each evaluation. *Id.* at 73-82. Plaintiff was diagnosed with, *inter alia*, asthma, depression, PTSD, and anxiety. *Id.* A June 16, 2004 abdominal sonogram was unremarkable other than fatty infiltration of the liver. *Id.* at 96. On September 1, 2005, an X-ray of Plaintiff's chest indicated that Plaintiff's heart was normal in size and that his lungs were free of infiltrates or effusion. *Id.* at 88.

A pulmonary function laboratory report dated July 15, 2004 indicated that Plaintiff's: 1) lung volumes were globally reduced; 2) expiratory airflows were reduced in accord with reduced vital capacity; and 3) airway resistance was increased. *Id.* at 100. However, Plaintiff's

4

pulmonary diffusing capacity was within normal limits, and Plaintiff had shown slight improvement compared to a prior study. *Id.*

The New York Fire Department Pension Fund drafted a letter dated August 19, 2004 stating that Plaintiff was disabled due to his respiratory condition. *Id.* at 99, 147. As a result, Plaintiff received an Award of Accident Disability Retirement letter, dated September 13, 2004. *Id.* at 146.

During a September 13, 2005 counseling session, Plaintiff reported that he had recently stopped taking his psychiatric medications. *Id.* at 166. Plaintiff explained that he had been experiencing anxiety and depression for 10 years. *Id.* He also expressed "tremendous" fear of death. *Id.* at 168.

Dr. Evelyn Wolf examined Plaintiff on July 18, 2006. *Id.* at 104-107. During this examination, Plaintiff stated he helped with light housework. *Id.* at 104. He was not in acute distress and his gait was normal. *Id.* at 105. Plaintiff's chest and lungs were clear to auscultation and percussion was normal. *Id.* at 105. In addition, Plaintiff had full elevation, abduction, adduction, and rotation in his shoulders, although he did have some discomfort raising his right arm. *Id.* Likewise, Plaintiff had full motor strength in his upper and lower extremities. *Id.* at 106. Ultimately, Plaintiff was diagnosed with: 1) reactive airway disease with normal pulmonary function tests; and 2) "post right shoulder surgery." *Id.* The prognosis for both of these conditions was "stable." *Id.* Based on these findings, Dr. Wolf opined that Plaintiff was only minimally limited in lifting, walking, standing and climbing. *Id.* at 107.

Pulmonary function tests conducted on July 18, 2006 revealed that Plaintiff had normal spirometry. *Id.* at 108.

Plaintiff was examined by Dr. Judith Shaw on September 25, 2006. *Id.* at 112-116. Dr.

Shaw stated that Plaintiff had average intellectual ability, as well as good insight and judgment. *Id.* at 115. She opined that Plaintiff was able to: 1) follow and understand simple directions and instructions; 2) perform simple tasks independently; 3) maintain his attention and concentration, at least for short periods of time; 4) maintain a simple regular schedule; 5) learn new tasks; 6) perform complex tasks independently; 7) make basic appropriate decisions; 8) relate adequately with others; and 9) appropriately deal with stress. *Id.* at 115. Ultimately, Dr. Shaw determined that Plaintiff's psychiatric problems were not significant enough to interfere with his ability to function on a daily basis. *Id.* at 116.

On October 3, 2006, Plaintiff's physical RFC was assessed. *Id.* at 117-122. It was determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk (with normal breaks) for a total of about six hours in an eight hour workday; 4) sit (with normal breaks) for a total of about six hours in an eight hour workday; and 5) push and/or pull with no limitations other than those already noted for lifting and carrying. *Id.* at 118. No postural, manipulative, visual, or communicative limitations were noted. *Id.* at 119-120. Other than avoiding noise, vibration, and hazards such as machinery and heights, no environmental limitations were noted. *Id.* at 120.

Dr. Judith Belsky determined on October 3, 2006 that Plaintiff's impairments did not precisely satisfy the diagnostic criteria of Listing 12.06. *Id.* at 128. She also opined that Plaintiff had no functional limitation in: 1) his activities of daily living; 2) maintaining social functioning; and 3) maintaining concentration, persistence or pace. *Id.* at 133. No episodes of deterioration of extended duration were noted. *Id.* Ultimately, Dr. Belsky stated that Plaintiff's psychological impairment was not severe. *Id.* at 137.

Plaintiff had normal lung mechanics on February 19, 2008. *Id.* at 140. He also had lung

6

volumes consistent with mild restrictive lung disease. *Id.*

On September 20, 2008, Richard Lawless—Plaintiff's pastoral counselor—wrote a letter indicating that after September 11, 2001, Plaintiff was diagnosed with and treated for PTSD, anxiety and depression. *Id.* at 148. Likewise, on September 25, 2008, Dr. Michael N. Zarzar wrote a letter confirming that he had been treating Plaintiff for Major Depressive Disorder and Generalized Anxiety Disorder, with PTSD as the differential diagnosis. *Id.* at 149.

Dr. Zarzar assessed Plaintiff's mental RFC on October 10, 2008. *Id.* at 171-175. He opined that Plaintiff was markedly limited in his ability to: 1) understand, remember and carry out detailed instructions; 2) maintain attention and concentration for extended periods; 3) perform activities within a schedule, maintain a regular schedule, or be punctual within customary tolerances; 4) work in coordination with or proximity to others without being distracted by them; and 5) complete a normal workweek without interruptions and perform at a consistent pace without an unreasonable number of rests; and interact appropriately with the general public. *Id*. at 171-172. Plaintiff was deemed moderately limited in his ability to: 1) remember locations and work-like procedures; 2) sustain an ordinary routine without special supervision; 3) ask simple questions or request assistance; 4) accept instructions and respond appropriately to criticism from supervisors; 5) respond appropriately to changes in the work setting; 6) travel in unfamiliar places or use public transportation; and 7) set realistic goals or make plans independently of others. *Id*. He was not significantly limited in any other rated ability. *Id.* Finally, in an undated letter Dr. Zarzar indicated that Plaintiff's depression led to decreased energy, motivation, and pleasure in activities. *Id*. at 176. He noted that Plaintiff also had difficulty sleeping. *Id.* Dr. Zarzar further noted that Plaintiff's PTSD symptoms of increased anxiety, nightmares, flashbacks and hypervigilance had improved, but residual symptoms remained. *Id*. at 176.

On September 15, 2008 Plaintiff testified that he was disabled due to reduced lung function, severe anxiety and depression. *Id*. at 197-198. He stated that his anxiety attacks were triggered by fears of his family being hurt and fear of death. *Id*. at 199. During anxiety attacks, Plaintiff indicated that he feels lightheaded and dizzy and has difficulty focusing. *Id*. at 203. In addition, Plaintiff testified that he suffers from shortness of breath and wheezing. *Id*. at 206. These symptoms are triggered by hot or cold weather and "different perfumes." *Id*. Plaintiff estimated that he used an Albuterol inhaler about once a week. *Id*. at 207. According to Plaintiff he was capable of helping his wife with chores around the house. *Id*. at 208. He also stated that he drives at least once a day for about 20 or 30 minutes. *Id*. at 208-209. Likewise, Plaintiff stated that he occasionally walks his dog for 30 to 45 minutes. *Id*. at 210-211. Finally, Plaintiff testified that he would not be comfortable working in an office environment because he would be nervous and it would bring back memories from September 11, 2001. *Id*. at 216.

Plaintiff also testified on February 3, 2009. He testified that he takes Xanax when he feels overwhelmed or when he cannot concentrate or focus. *Id.* at 225. This happened to him about once a week. *Id.* In addition, Plaintiff testified that he has difficulty sleeping. *Id.* at 229.

Dr. Jennifer Blitz testified as a medical expert ("ME") at the February 3, 2009 hearing after reviewing Plaintiff's medical records. She testified that Plaintiff's depression had improved in 2006 and that Plaintiff's mood was stable when he was taking Cymbalta. *Id.* at 230-231. Moreover, Dr. Blitz testified that Dr. Zarzar's opinions were "not substantiated by treatment records." *Id.* at 231.

Finally, the VE in this matter testified that a person with Plaintiff's RFC could perform jobs which exist in significant numbers in the national economy. *Id.* at 233-236.

Based on this record, the ALJ made the following specific findings:

8

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06 . . .
>
> . . . claimant has the residual functional capacity to perform the full range of light work . . . [and] can perform simple and complex tasks . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . .
>
> The claimant's treating counselor characterized his post-traumatic stress disorder as mild . . . Dr. Zarzar . . . opined that the claimant has some marked mental limitations . . . However, his conclusory statements are not supported by clinical treatment notes nor are they supported by the balance of the medical evidence. Dr. Blitz, a medical expert, testified that Dr. Zarzar's opinion is not supported by the medical record. Although the record was held open for the claimant to supply treatment records by Dr. Zarzar, only one letter was received . . . This letter indicated that although some residual symptoms were present, the claimant's condition had improved. Limited weight is given Dr. Zarzar's opinion because his assessment is not supported by his clinical notes or the record as a whole. The claimant testified that he uses Albuterol only one time per week. He can sit through an entire Yankee game. He has no problem lifting and carrying a gallon of milk. The medical expert stated that the claimant would not be precluded from engaging in low stress work . . .
>
> Significant weight is given to the opinions of the . . . [ME] and . . . [VE], as they are supported by the objective clinical and diagnostic testing and the record as a whole . . .
>
> [T]here are jobs that exist in significant numbers in the nation economy that the claimant can perform . . .
>
> The claimant has not been under a disability, as defined in the Social Security Act from September 11, 2004 through the date of this decision.
>
> *Id.* at 16-20.

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the

9

evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit. The undersigned will nonetheless address portions of Plaintiff's specific assignments of error.

**The ALJ properly weighed the medical evidence**

Plaintiff asserts that the ALJ erred in giving Dr. Zarzar's medical opinions limited weight. It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . . an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Id. (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus,

"[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209, * 2 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

In his decision, the ALJ fully explained his reasoning in weighing the medical evidence, including Dr. Zarzar's opinions. These reasons were supported by substantial evidence and, therefore, this assignment of error is without merit.

**The ALJ properly assessed Plaintiff's RFC and presented a proper hypothetical to the VE**

Plaintiff next contends that the ALJ presented an improper hypothetical to the VE prior to the VE's testimony. An ALJ has "great latitude in posing hypothetical questions [to a VE] and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." Id. at * 5. The ALJ is required only to "pose those [hypothetical questions] that are based on substantial evidence and accurately reflect the plaintiff's limitations . . ." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. March 13, 2000). Here, the hypothetical question posed to the VE by the ALJ was based on a RFC determination supported by substantial evidence and therefore accurately reflected all of Plaintiff's limitations. This assignment of error is without merit.

11

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-13) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-15) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, October 19, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE